## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 24 2019, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE CHILD
ADVOCATES, INC.

DeDe Connor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of J.B., Father, and L.B. and I.B., Minor Children,<br><br>J.B.,<br>*Appellant-Respondent*, | September 24, 2019<br><br>Court of Appeals Case No. 19A-JT-635<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark A. Jones, Judge<br>The Honorable Larry E. Bradley, Magistrate |

                    v.

Indiana Department of Child
Services,

*Appellee-Petitioner*,

and

Child Advocates, Inc.,

*Appellees-Guardian Ad Litem.*

**Kirsch, Judge.**

[1]     J.B. ("Father") appeals the decision of the juvenile court terminating his parental rights to his children L.B. and I.B. (together, "Children"). Father contends that the trial court's decision was not supported by clear and convincing evidence because he asserts that insufficient evidence was presented to establish that there was a reasonable probability that the conditions that resulted in Children's removal would not be remedied, that the continuation of the parent-child relationship posed a threat to Children's well-being, and that termination was in Children's best interest.[1]

[2]     We affirm.

---

[1] Mother consented to the adoption of the children in February 2019 and was dismissed from the case.

## Facts and Procedural History

[3] Father is the biological father of L.B., born June 30, 2012, and I.B., born April 14, 2016. *Tr. Vol. II* at 52-53. His involvement with the Indiana Department of Child Services ("DCS") began in 2012. In 2013, Father was arrested for neglect of a dependent concerning L.B. and possession of methamphetamine and was later convicted of the neglect of a dependent charge. *Id*. at 59. In July 2017, Father was incarcerated, and Children were removed from Mother's care because of her lack of housing and her positive test for methamphetamine.

[4] On July 6, 2017, DCS filed a petition alleging Children to be children in need of services ("CHINS"), and Children were placed with their maternal grandparents. *Pet'r's Ex*. 21. On September 22, 2017, Father waived the CHINS fact-finding hearing, and Mother admitted Children were CHINS. *Pet'r's Ex*. 28. The juvenile court ordered Father to participate in services, including the Father Engagement Program, substance abuse assessment and to follow all recommendations, and random drug screens. *Pet'r's Ex*. 32. DCS referred a substance abuse assessment and random drug screens to Father at least twice. *Tr. Vol. II* at 9-10, 79. Father was on probation and had been ordered to complete drug screens through probation, so he agreed to give DCS access to those records. *Id*. at 10. However, Father never provided the consent or the name of his probation officer to DCS. *Id*. at 10, 14. DCS was unable to return Children to Father's care because he had not demonstrated he could maintain stability and sobriety to take care of Children. *Id*. at 11, 80. Father remained on supervised parenting time with Children throughout the case. *Id*.

at 11. Because of his incarceration, Father did not see Children between April 2018 and February 2019. *Id*. at 53-54, 62.

[5] On August 21, 2018, DCS filed a petition to terminate Father's parental rights to Children. *Appellant's App. Vol. II* at 27-30. A hearing on that petition was held, and evidence was heard. On February 26, 2019, the juvenile court issued its order terminating the parent-child relationship between Children and Father. The juvenile court found by clear and convincing evidence:

> 1. [Father] is the father of [I.B.] and [L.B.], minor children born on April 14, 2016 and June 30, 2012, respectively.

> 2. The children's mother has executed consents for their adoption.

> 3. Child in Need of Services Petitions "CHINS" were filed on [Children] on July 6, 2017 due to lack of housing and their mother testing positive for methamphetamine. [Father] was incarcerated on drug charges.

> 4. [L.B.] was the subject of a prior CHINS case between December of 2012 and June of 2015.

> 5. [Children] were ordered detained and placed outside the home at the July 6, 2017, initial hearing.

> 6. [Children] were adjudicated as being [CHINS] on September 22, 2017.

> 7. Disposition for [Father] was held on October 20, 2017. At disposition he was ordered to successfully complete a Father

Engagement Program, a substance abuse assessment and follow all recommendations, and random drug screens.

8. [Children] had been removed from [Father] for at least six (6) months under a dispositional decree prior to this termination action being filed on August 21, 2018.

9. [Father] was released from jail on probation approximately three months after [Children's] CHINS cases were filed.

10. [Father] spent an additional couple of months incarcerated after he violated probation by failing to appear at a hearing.

11. In April of 2018, [Father] was incarcerated on a burglary charge. He was released about a week before this trial and will be on house arrest for two years.

12. [Father] has previous criminal history during [L.B.]'s life which include[s] Neglect of a Dependent and Possession of Methamphetamine.

13. When not incarcerated, [Father] minimally participated in services. He had minimal contact with his [DCS] family case manager.

14. No evidence was presented to show that [Father] participated in any service to better himself while incarcerated.

15. After his release from his last incarceration, [Father] entered Next Step Sober Living Community where he has resided for the past week. He has started taking classes on drug treatment, parenting, and self-betterment.

16. [Father] has been putting in applications for employment.

17. The general time for residing at Next Step is ninety days.

18. [Father] admits that he has done drugs for a very long time. He last did drugs ten months ago right before he became incarcerated and was therefore in a closed environment.

19. It is concerning that [Father] is adamant that there is no way he would go back to drugs.

20. [Father] completed drug treatment prior to [Children's] CHINS cases and relapsed.

21. [Father] saw [Children] a few days prior to trial in this matter. Prior to that, his last in-person contact was ten months prior. He has had written and phone contact.

22. There is a reasonable probability that the conditions that resulted in the removal and continued placement of [Children] outside the home will not be remedied by [Father] who was incarcerated at the onset of the CHINS cases and was just released on house arrest for two years. He has violated probation once during the CHINS proceedings for which he was incarcerated and has a history of criminal activity. When not incarcerated he failed to engage in services and only started programs right before trial. He must still complete services and demonstrate sobriety outside incarceration.

23. There is a reasonable probability that the continuation of the parent-child relationship poses a threat to[Children's] well-being in that it would pose as a barrier to obtaining permanency and stability for them through an adoption when [Father] is not in a position to offer permanency and parent.

24. [Children] have been placed with their maternal grandparents since removal. This placement is pre-adoptive.

25. [LB.] has been receiving therapy. She is anxious about where she will be in the future during discussions with the Guardian ad Litem.

26. [I.B.] has spent the majority of her life with the grandparents.

27. [Children] have been observed as comfortable and bonded.

28. Based on the length of time and need for stability and permanency, [Children's] Guardian ad Litem believes adoption to be in their best interests without additional wait.

29. [Children's] family case manager since October of 2017 recommends moving forward with adoption as being in [Children's] best interests.

30. Termination of the parent-child relationship is in the best interests of [Children]. Termination would allow them to be adopted into a stable and permanent home where their needs will be safely met.

31. There exists a satisfactory plan for the future care and treatment of [Children], that being adoption. Although guardianship was discussed with the maternal grandmother, there are financial considerations available with adoption.

*Id.* at 102-03. Based upon the foregoing findings and conclusions, the juvenile court ordered that Father's parental rights to Children be terminated. Father now appeals.

# Discussion and Decision

The traditional right of parents to establish a home and raise their children is protected by the United States Constitution, but the right may be terminated when parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. When the Department of Child Services seeks to terminate the parent-child relationship of a child that has been adjudicated as a CHINS, its petition must allege, among other things:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[7]     Ind. Code § 31-35-2-4(b)(2)(B)-(D).  If the trial court finds that each of these allegations "are true," it must "terminate the parent-child relationship."  Ind. Code § 31-35-2-8(a).  The trial court must enter findings of fact that support its conclusions.  Ind. Code § 31-35-2-8(c).  "[A] finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence."  Ind. Code § 31-34-12-2.

[8]     In our review of the termination of the parent-child relationship, we do not reweigh the evidence or determine the credibility of witnesses.  *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009).  We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.  *Id.*  We first determine whether the evidence clearly and convincingly supports the findings, and then we determine whether the findings clearly and convincingly support the judgment.  *In re E.M.*, 4 N.E.2d 636, 642 (Ind. 2014).

[9]     In reviewing whether the evidence "clearly and convincingly" supports the findings and the findings "clearly and convincingly" support the judgment, we give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand, and we will not set aside its findings or judgment unless clearly erroneous.  *Id.*  In our review, we determine whether there is probative evidence from which a reasonable fact-finder could have found the challenged matters proven by clear and convincing evidence.  *Id.*

[10]    The juvenile court's findings and conclusions are set out above.  Of particular significance is the juvenile court's conclusion that "[t]here is a reasonable

probability that the conditions that resulted in the removal and continued placement of [Children] outside the home will not be remedied by [Father]." *Appellant's App. Vol. II* at 103. The court noted that Father was incarcerated at the onset of the CHINS cases, had just been released on house arrest for two years; the court further noted that Father had violated his probation during the CHINS proceedings, for which he was again incarcerated. *Id.* Father has an extensive history of criminal activity and was incarcerated for the majority of the duration of the present case. When Father was not incarcerated, he did not participate in the services ordered by DCS and had only recently began some of the programs right before the termination hearing. Father's history of being unable to provide a suitable environment for Children, his inability at the time of the termination to do so, and his pattern of unwillingness to modify his behavior, support the juvenile court's conclusion that the condition that resulted in removal would not be remedied.[2]

[11] The juvenile court also made the following conclusion: "Termination of the parent-child relationship is in the best interests of [Children]. Termination would allow them to be adopted into a stable and permanent home where their needs will be safely met." *Id.* A parent's historical inability to provide a suitable, stable home environment along with the parent's current inability to

---

[2] We need not address whether the juvenile court properly concluded that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to Children's well-being because Indiana Code section 31-35-2-4(b)(2)(B) is written such that, to properly effectuate the termination of parental rights, the juvenile court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. *A.D.S.*, 987 N.E.2d at 1157 n.6.

do so supports a finding that termination is in the best interest of the child. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). Testimony of the service providers, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied*. At the time of the termination hearing, Children had been removed for over a year and a half, and Father had failed to make the changes in his life necessary to provide Children with a safe and healthy environment. As discussed above, DCS presented sufficient evidence that there was a reasonable probability that Father would not remedy the reasons for Children's removal. Additionally, the Guardian Ad Litem and the family case manager both testified that they believed termination of Father's parental rights would be in Children's best interests because it would provide stability, safety, and permanency, which Children needed. *Tr. Vol. II* at 81-82, 94-95. Based on the totality of the evidence, we conclude that the evidence supported the juvenile court's determination that termination of Father's parental rights was in Children's best interests.

[12] Based on the record before us, we cannot say that the juvenile court's termination of Father's parental rights to Children was clearly erroneous. We, therefore, affirm the juvenile court's judgment.

[13] Affirmed.

Baker, J., and Crone, J., concur.